UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| George Arthur Philip )<br>)<br>Petitioner )<br>)<br>v.    )<br>)<br>Jeff Sessions, Attorney General, et al, )<br>)<br>Respondents ) | Case No. 1:17-cv-23343-CMA |

## DECLARATION OF JULIUS CLINTON

I, Julius Clinton, declare under penalty of perjury the following:

1. I am a Detention and Deportation Officer (DDO) in Removal and International Operations (RIO) assigned to the Headquarters Office of Enforcement and Removal Operations (HQ ERO), United States Immigration and Customs Enforcement (ICE), within the Department of Homeland Security in Washington D.C. RIO is responsible for assisting field offices in obtaining travel documents necessary to execute administratively final orders of removal. I have been employed with ICE since 2006. I have worked in the HQ ERO within ICE since February 2010. From September 2014 to the present, I have been employed in my current position as a DDO within RIO in Washington, D.C.

2. In my capacity as a DDO for RIO, I am in charge of the Iraqi Docket, which includes assisting the ERO field offices in obtaining travel documents and coordinating removal of aliens with final orders of removal. RIO is also responsible for post-order custody reviews (POCR) of aliens detained pursuant to the Immigration and Nationality Act section 241 who are in ICE custody for more than 180 days from commencement of the removal period. I am the DDO over George Arthur Philip's case. George Arthur Philip, identified as "Petitioner," has been assigned alien registration number A[redacted]821.

3. This declaration is based upon my professional knowledge, information obtained from other individuals employed by ICE, and information obtained from DHS records. I am fully familiar with the facts and circumstances of Petitioner's immigration proceedings, his detention by DHS, and the efforts to arrange for his removal from the United States.

4. On or about January 9, 2017, Petitioner entered the United States without inspection at Isabela, Puerto Rico, which is not designated as a port of entry. Officers of U.S. Customs and Border Protection (CBP) responded to a report and encountered Petitioner, along with 17 other undocumented aliens. In a sworn statement, Petitioner advised CBP officers that he was born in Baghdad, Iraq and is a citizen or national of Iraq. Petitioner was detained and processed for expedited removal under 8 U.S.C. § 1225(b)(1) as an inadmissible arriving alien.

5. On January 10, 2017, Petitioner was served with Form M-444, Information about Credible Fear Interview, which explained his rights and the procedures for the credible fear of persecution interview. Because Petitioner expressed a fear of return to Iraq, he was referred to an asylum officer for a credible fear interview. On January 25, 2017, the asylum officer determined that Petitioner had not established a credible fear of persecution.

6. On February 2, 2017, Petitioner was ordered removed by the immigration officer pursuant to 8 U.S.C. § 1225(b)(1). Petitioner requested that an immigration judge review the asylum officer's negative credible fear determination. On February 7, 2017, an immigration judge affirmed the negative credible fear determination. Consequently, Petitioner is subject to a final order of removal.

7. On May 5, 2017, a field detention and deportation officer contacted RIO for assistance in scheduling Petitioner's removal.

8. Petitioner was scheduled for removal to Iraq on a late June 2017 flight. On June 16, 2017, Petitioner was booked into the Florence Staging Facility in Florence, Arizona, for removal to Iraq on an ICE charter flight set to depart the United States in the end of June of 2017.

9. On June 27, 2017, the United States District for the Eastern District of Michigan issued a temporary restraining order and subsequently a preliminary injunction in the case of *Hamama v. Adducci*, No. 17-cv-11910, 2017 WL 3124331 (E.D. Mich. July 24, 2017), enjoining the United States from effectuating removal to Iraq of any and all Iraqi nationals in the United States who had administratively final orders of removal on June 24, 2017, and who have been detained for removal by ICE.

10. On October 4, 2017, Petitioner was served, in accordance with the order issued in the *Hamama* litigation, a notice of class membership, which included a Know Your Rights informational sheet and a voluntary removal packet that contained information and procedures to opt out of the putative class from *Hamama, et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017).

11. But for the injunction in the *Hamama* case, Petitioner would have been removed to Iraq. The government of Iraq has already demonstrated its willingness to

accept Iraqi nationals with administratively final orders of removal for repatriation. For example, the Government of Iraq has issued travel documents for individuals who have been ordered excluded from the putative class in *Hamama, et al. v. Adducci*, No. 17-11910 (E.D. Mich. filed June 15, 2017). ICE will request a current travel document for Petitioner as soon as he is excluded from the *Hamama* putative class.

12. Based upon this officer's experience and expertise, I believe that Iraq will issue a travel document for Petitioner and ICE will remove Petitioner to Iraq in the reasonably foreseeable future once the Stay of Removal for Iraqi nationals is lifted as to the Petitioner, or Petitioner is removed from the putative class.

I hereby declare under penalty of perjury that the above statements are true and correct to the best of my knowledge and belief.

_11-14-17_
Date

Julius Clinton
DDO
Department of Homeland Security
U.S. ICE
Washington, D.C.