UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:21-cv-20046-ALTMAN

IN THE MATTER OF:

EADAAN, NASEER AKRAM
A # 20XXX XXX X21

 Petitioner,

 v.

U.S. ATTORNEY GENERAL,
U.S. ATTORNEY OFFICE,
U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA,
FLORIDA FIELD OFFICE DIRECTOR, ERO/DHS,
ICE HEADQUARTER CASE MANAGEMENT UNIT, US DHS,
OFFICE AND WARDEN OF IMMIGRATION DETENTION FACILITY,

 Respondents.
_____/

### RESPONDENTS' CORRECTED RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS AND PARAGRAPH 2 OF ORDER TO SHOW CAUSE

Petitioner filed the instant habeas petition[1] on January 6, 2021 in the United States District Court for the Southern District of Florida, challenging United States Immigration and Customs Enforcement ("ICE") of the United States Department of Homeland Security ("DHS") custody among other claims. Respondents respond both to the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") (E.C.F. No. 1) of Petitioner Naseer Akram Eadaan ("Petitioner") and Paragraph 2 of this Court's January 11, 2020 Order to

---

[1] A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 USC § 2243. In cases involving present physical confinement, the Supreme Court reaffirmed in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004).

Petitioner is currently detained at the Krome Service Processing Center, an ICE detention facility in Miami, Florida. His immediate custodian is Liana J. Castano, Officer in Charge. Accordingly, the proper Respondent in the instant case is Ms. Castano, in her official capacity, and all other respondents should be dismissed.

Show Cause (E.C.F. No. 6).

For the facts and reasons set forth below, the Court must dismiss this case because (1) collateral estoppel bars this action;[2] (2) Petitioner's immigration detention is mandatory under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and, unlike aliens subject to detention under 8 U.S.C. § 1231(a)(6), Petitioner's detention is not subject to any constitutional limitations and may continue until his removal, which, as discussed below, is now scheduled within three weeks of this filing.[3]

---

[2] Petitioner has individually filed two previous actions under one of his alias² names, which were styled: *George P Arthur, Petitioner, v. Jefferson Sessions III, et al., Respondents,* Case No.: 4:18-CV-113-CDL-MSH (M.D. GA. 2019) ("MD GA Case") and *George Phillip Arthur, Petitioner, v. Jefferson Sessions III, et al., Respondents,* Case No.: 1:17-cv-23343-ALTONAGA/White (S.D. Fla. 2018) ("Case 17-23343"). Collateral estoppel in the instant case arises from Petitioner's MD GA Case.

[3] On January 20, 2021, DHS Acting Secretary Pekoske issued a Memorandum entitled "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities" that is published and available at https://www.dhs.gov/sites/default/files/publications/21_0120_enforcement-memo_signed.pdf) ("Memorandum"). Acting Secretary Pekoske's Memorandum directs "Department of Homeland Security components [including ICE] to conduct a review of policies and practices concerning immigration enforcement. It also sets interim policies during the course of that review, including a 100-day pause on *certain* removals to enable focusing the Department's resources where they are most needed." (emphasis added). With respect to the "pause on certain removals," the Acting Secretary's Memorandum provides in pertinent part:

> The pause on removals applies to any noncitizen [Footnote 1 to the Memorandum states "Noncitizen" as used in this memorandum does not include noncitizen nationals of the United States"] present in the United States when this directive takes effect with a final order of removal *except* one who:
>
> 1. According to a written finding by the Director of ICE, has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to the national security of the United States; or
>
> 2. <u>Was not physically present in the United States before November 1, 2020</u>; or
>
> 3. Has voluntarily agreed to waive any rights to remain in the United States, provided that he or she has been made fully aware of the consequences of waiver and has been given a meaningful opportunity

## I. FACTUAL BACKGROUND

### A. Apprehension, Processing, Proceedings Before Immigration Judge.

Officers of U.S. Customs and Border Protection ("CBP") responded to a reported maritime smuggling operation and encountered Petitioner, along with 17 other undocumented aliens. The Petitioner, a native and citizen of Iraq who has used multiple aliases and refused to give CPB officials his accurate name, illegally entered the United States at Isabela, Puerto Rico, which is not designated as a port of entry, on or about January 9, 2017. Declaration of Aldo Martin, Deportation Officer ("DO") at the Krome Service Processing Center in Miami ("Krome"), ICE, Enforcement and Removal Operations ("ERO"), dated January 22, 2021, filed here at ECF No. 11-2 as Exhibit "1" to this Response ("Martin Decl.") at ¶ 4. *See* Declaration of Julius Clinton, Detention and Deportation Officer ("DDO") in Removal and International Operations ("RIO") assigned to the Headquarters Office of ERO ("HQ-ERO"), ICE, DHS, in Washington D.C., dated November 14, 2017, filed here at ECF No. 11-3 as Exhibit "2" to this Response ("Clinton Decl.") at ¶ 4. *See also* Record of Deportable Alien, Form I-213, identifying Petitioner, as George (Unknown Last Name), filed here at ECF No. 11-4 as Exhibit "3" to this Response and the Declaration of Petitioner Eadaan, Naseer Akram AKA Arthur, George Phillip ("Petitioner's Decl.") at ECF No. 1 at 11 – 12, also filed here at ECF No. 11- 5 as Exhibit "4" to this Response.

CBP transported Petitioner to the Ramey Border Patrol Station, where he admitted

---

to access counsel prior to signing the waiver; or

4. For whom the Acting Director of ICE, following consultation with the General Counsel, makes an individualized determination that removal is required by law.

Memorandum (emphasis supplied), a copy of which was filed here at ECF No. 11-36 as Exhibit "36" to this Response.

The Undersigned AUSA has been informed that as of this date of this filing, Petitioner's removal date is unchanged.

having illegally entered the United States by sea. Martin Decl. at ¶ 4. Petitioner was detained and processed for expedited removal under 8 U.S.C. §1225(b)(1) as an inadmissible arriving alien. *Id*. Upon a Determination of Inadmissibility, on January 10, 2017, a Notice and Order of Expedited Removal, Form I-860, was entered, a copy of which was filed here at ECF No. 11-6 as Exhibit "5" to this Response. Petitioner was served on January 10, 2017, with Form M-444, Information about Credible Fear Interview, a copy of which was filed here at ECF No. 11-7 as Exhibit "6" to this Response, which explained his rights and the procedures for the credible fear of persecution interview. *Id*. Martin Decl." at ¶ 4.

On or about January 19, 2017, Petitioner was transferred to Krome. Martin Decl. at ¶ 5. Because Petitioner expressed a fear of return to Iraq, he was referred to an asylum officer for a credible fear interview. Petitioner was interviewed on January 26 and 27, 2017. *Id.* On February 2, 2017, the asylum officer determined that Petitioner had not established a credible fear of persecution and ordered Petitioner removed pursuant to 8 U.S.C. §1225(b)(1). *Id.* On the same date, Petitioner was referred to an Immigration Judge to review the officer's determination. *Id. See* February 2, 2017 Form I-863 Notice of Referral to Immigration Judge, a copy of was filed here at ECF No. 11-8 as Exhibit "7" to this Response. On February 2, 2017, Petitioner was ordered removed by the immigration officer pursuant to 8 U.S.C. §1225(b)(1). *See* Form I-860 Notice and Order of Expedited Removal, served February 2, 2017 (filed here at ECF No. 11-6 as Exhibit "5" to this Response).[4] *See also* Martin Decl. at ¶ 5 (filed at ECF No. 11-2 as Exhibit "1" this Response-).

Petitioner requested that an Immigration Judge review the asylum officer's negative credible fear determination, and on February 7, 2017, the Immigration Judge affirmed the

---

[4] The Determination of Inadmissibility was made at the time of apprehension and processing. Petitioner was transferred from Puerto Rico to Krome shortly after apprehension and arrived at Krome on January 19, 2017. This was likely the reason Petitioner was not served with the Form I-860 Notice and Order of Expedited Removal until February 2, 2017.

negative credible fear determination and returned the case to DHS. *See* February 7, 2017 Order of Immigration Judge in Credible Fear Review Proceedings, filed here at ECF No. 11-9 as Exhibit "8" to this Response. *See also* Martin Decl. at ¶ 6. Petitioner is subject to a final order of removal. *Id.*

### B.    Eastern District of Michigan Litigation.

Following the Immigration Judge's affirmance of the negative credible fear determination, ICE began to process Petitioner's case for removal to Iraq. *See* Martin Decl. at ¶ 7.

Petitioner's scheduled June, 2017 removal was canceled following the United States District Court for the Eastern District of Michigan's issuance of an injunction in *Hamama v. Adducci*, No. 2:17-cv-11910-MAG-DRG, Docket Entry No. 87 at 33, 261 F.Supp.3d 820, 841 (E.D. Mich. July 24, 2017) ("*Hamama* Case"), a copy of which was filed here at ECF No. 11-10 as Exhibit "9" to this Response. *See* Martin Decl. at ¶ 7.[5] As noted, Petitioner was subject to an administratively final Expedited Removal Order, accordingly, the Respondents in the *Hamama* Case filed a Motion To Lift Preliminary Injunction as to George P. Arthur and Others with Final Orders of Expedited Removal. A copy of that Motion, docketed in the *Hamama* Case at Docket Entry No. 134, was filed here at ECF No. 11-11 as Exhibit "10" to this Response. *See also* Martin Decl. at ¶ 7. Thereafter, on September 5, 2018, the District Judge in the *Hamama* Case entered a Stipulated Order Lifting The Preliminary Injunction for George P. Arthur. That Order was docketed in the *Hamama* Case at Docket Entry No. 384 and was filed here at ECF No. 11-12 as Exhibit "11" to this Response. *See also* Martin Decl.

---

[5]    The July 24, 2017 Preliminary Injunction Order enjoined Respondents from "enforcing final orders of removal directed to any and all Iraqi nationals in the United States who had final orders of removal on June 24, 2017." *Hamama v. Adducci*, 261 F.Supp.3d 820, 841 (E.D. Mich. July 24, 2017), a copy was filed here at ECF No. 11-10 as Exhibit "9" to this Response.

at ¶ 7.[6]

### C.    Petitioner's First Southern District of Florida Litigation.

While *Hamama* was pending, on or about September 5, 2017, Petitioner filed a Petition in the United States District Court for the Southern District of Florida styled *George Phillip Arthur, Petitioner, v. Jefferson Sessions III, et al., Respondents,* Case No.: 1:17-cv-23343-ALTONAGA/White ("Case :17-cv-23343"), challenging ICE's continued detention pending his removal. *See* Case 17-23343 Petition, docketed at Docket Entry No. 1, filed here at ECF No. 11-14 as Exhibit "13" to this Response. *See also* Martin Decl. at ¶ 8. On January 3, 2018, Petitioner requested the Court in Case 17-23343 to hold the matter in abeyance until the court in the *Hamama* Case resolved whether Petitioner could remain a member of the *Hamama* Case class. See Petitioner's Unopposed Motion For A Stay Of Proceedings, docked in Case 17-23343 at Docket Entry No. 33, filed here at ECF No. 11-15 as Exhibit "14" to this Response. On January 4, 2018, the Honorable Cecilia M. Altonaga, United States District Judge, entered an Order administratively closing the case. That Order is docked in Case 17-23343 at Docket Entry No. 34 and filed here at ECF No. 11-16 as Exhibit "15" to this Response. Thereafter, on February 1, 2018, Petitioner's counsel in Case 17-23343 filed a motion to reopen that case. A copy of Petitioner's Motion To Reopen, was docked in Case 17-23343 at Docket Entry No. 36 and was filed here at ECF No. 11-17 as Exhibit "16" to this Response. Through his counsel in Case 17-23343, Petitioner additionally filed a motion to dismiss his habeas petition without prejudice. A copy of Petitioner's Motion To Dismiss, was docked in Case 17-23343 at Docket Entry No. 37, and was filed here at ECF No. 11-18 as Exhibit "17"

---

[6]   On December 20, 2018, the United States Court of Appeals for the Sixth Circuit vacated and remanded the Preliminary Injunction holding the district court lacked jurisdiction to enter its preliminary injunction both with regard to the removal-based and the detention-based claims and removal orders were not subject to judicial review. *Hamama v. Adducci*, 912 F.3d 869, 880 (6th Cir. 2018), a copy of that decision was filed here at ECF No. 11-13 as Exhibit "12" to this Response.

-6-

to this Response. Finally, on February 5, 2018, Judge Altonaga, entered an Order dismissing the habeas petition without Prejudice on February 5, 2018. *See* Order of Dismissal, Case 17-23343, Docket Entry No. 38 (SD Fla. 02/05/2018), a copy of which was filed here at ECF No. 11-19 as Exhibit "18" to this Response.

### D. Denial of Petitioner's Motion to Reopen Immigration Court Proceeding

Meanwhile, during the pendency of Petitioner's habeas litigation in the Southern District of Florida, in January 2018, through counsel, Petitioner filed an emergency motion to reopen and request for stay of removal with the Immigration Judge. *See* Martin Decl. at ¶ 9. On January 23, 2018, the Immigration Court rejected Petitioner's motion to reopen because motions are not permitted to be filed in Credible Fear Review cases. *See* Rejected Filing - Notice To Attorney Or Representative of Petitioner, which was filed here at ECF No. 11-20 as Exhibit "19" to this Response. *See* Martin Decl. at ¶ 9.

### E. Petitioner's Middle District of Georgia Litigation

On June 4, 2018, while represented by counsel, Petitioner filed a new habeas petition, styled *George Phillip Arthur, Petitioner, v. Jefferson Beauregard Sessions, III, Attorney General of the United States*, Case No. 4:18-CV-113-CDL-MSH, Docket Entry No. 1, in the United States District Court for the Middle District of Georgia, Columbus Division ("MD GA Case"), a copy of the Petition filed in Petitioner's MD GA Case was filed here at ECF No. 11-21 as Exhibit "20" to this Response. After extensive briefing and an evidentiary hearing on July 31, 2019 before the Honorable Stephen Hyles, United States Magistrate Court Judge,[7] on August 29, 2019, Judge Hyles entered a Report and Recommendation, docketed at MD GA Case Docket Entry No. 45 (a copy of which was filed here at ECF No. 11-23 as Exhibit "22" to this Response), recommending that Petitioner's application for habeas corpus relief be denied.

---

[7] A copy of the Transcript of the Evidentiary Hearing in the MD GA Case was filed here at ECF No. 11-22 as Exhibit "21" to this Response.

Among other things Judge Hyles held:

> Here, the general post-order of removal language in § 1231 is controlled by the specific, unambiguous language of § 1225(b)(1)(B)(iii)(IV), which mandates detention of an alien, such as Petitioner, "until removed." The Court concludes, therefore, that the six-month presumptively reasonable removal period under § 1231 and *Zadvydas [v. Davis*, 533 U.S. 678, 697, 699-700 (2001)] does not apply to Petitioner.
>
> Moreover, even if *Zadvydas* applies to Petitioner, he is still not entitled to relief. "It is well established that *Zadvydas* does not apply where a detainee who holds the keys to his freedom thwarts his removal by lying or refusing to cooperate with ICE." *Akande v. Hassell,* No. 4:12-cv-03612-RBP-HGD, 2013 WL 5774953, at *6 (N.D. Ala. Aug. 21, 2013) (citation and quotation marks omitted); *see also Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (*per curiam*) (holding that three-year detention was not unreasonable where alien refused to sign travel document and express willingness to return to Brazil); 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended . . . if the alien conspires or acts to prevent the alien's removal subject to an order of removal."). Failure to cooperate includes frustrating efforts to identify the alien. *See Hook v. Lynch,* 639 F. App'x 229, 230 (5th Cir. 2016) (affirming denial of habeas petition where alien "repeatedly rebuffed requests from ICE and United Kingdom consular officials to provide the specific information and documentation regarding his identity necessary to secure travel documents"); *Powell v. Ashcroft*, 194 F. Supp. 2d 209, 210 (E.D.N.Y. 2002) (finding failure to cooperate where alien "repeatedly provided INS with inconsistent information regarding his identity").
>
> The Court finds that Petitioner has failed to cooperate with his removal. The primary difficulty in this case has been confirming Petitioner's identity. . . .[8]
>
> . . .
>
> The Court concludes that Petitioner has obstructed efforts at his removal. If he is frustrated that Respondents do not accept his "word" as to his

---

[8] Judge Hyles' Report and Recommendation at pages 6 through 11, includes an extensive discussion of Petitioner's prolonged efforts to obstruct his removal and his failure to provide accurate information as to his identity; as well, the efforts ICE made to determine Petitioner's identity so that travel documents could be obtained. See MD GA Case Report and Recommendation (filed at ECF No. 11-23 as Exhibit "22" to this Response). *See also* July 17, 2018 Declaration of DDO James Maddox, which was filed in the MD GA Case and filed here at ECF No. 11-24 as Exhibit "23" to this Response. Petitioner also concedes he refused to disclose his identity and everything he did was "to win much time I can..." *See* Petitioner's Declaration, ECF No. 1 at 11 (also filed here at ECF No. 11-5 as Exhibit "4" to this Response).

> identity and country of origin, he has no one but himself to blame. From the beginning of the process, he has been evasive, given inconsistent statements, and refused to assist ICE in establishing his identity and citizenship. The Court is especially disturbed by Petitioner's refusal to meet with linguistic specialists who may be able to provide insight into his alleged non-Iraqi Arabic accent. Even if the *Zadvydas* analysis applies to his detention, therefore, the Court recommends that this ground for release be rejected.
>
> . . .
>
> . . . the due process rights of someone such as Petitioner — who was detained shortly after crossing the border and has no substantial ties to this country—are limited. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").
>
> Moreover, even under a more expansive view of due process, Petitioner is not entitled to relief. While Petitioner has now been detained for approximately thirty-two months—and there are certainly cases finding even shorter periods to be constitutionally unreasonable—none of those cases have dealt with someone like Petitioner. This is important as a "reasonableness inquiry is necessarily fact intensive, and the factors that should be considered will vary depending on the individual circumstances present in each case." *Sopo v. U.S. Att'y Gen.* 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018). Additionally, even the courts which took an expansive view of due process in these cases recognize that a lack of cooperation and obstructive behavior are factors to consider in determining whether an alien's detention violates the Due Process Clause. *See, e.g., Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) ("Courts should be 'sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration.'") (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). The Court has discussed Petitioner's failure to cooperate in detail. The Court does not accept that an alien detainee can engage in a game of catch-me-if-you-can and then be rewarded for his obstructive behavior. The Court also refuses to believe that due process requires the Government to admit an alien into this country without at least knowing who he is.
>
> The denial of Petitioner's application for habeas relief would, of course, be without prejudice, allowing him to bring another petition if his detention continues. . . . At present, however, Petitioner is not entitled to habeas relief.

MD GA Case, Report and Recommendation at pp. 5, 6, 11-14 (filed here at ECF No. 23 here as Exhibit "22' to this Response). On September 19, 2019, "[f]inding no clear error," the

-9-

Honorable Clay D. Land, Chief United States District Judge, Middle District of Florida "adopt[ed] the Recommendation of the Magistrate Judge and ma[d]e[] it the order of th[e] Court" and entered Judgment dismissing the action. MD GA Case, Order Docket Entry Nos. 46 and 47 (copies of which were filed here at ECF Nos. 11-25 and 11-26 as Exhibits "24" and "25" to this Response).

### F. ICE's Continued Efforts to Obtain Petitioner's True Identity and Obtain Travel Documents

As the Judge Hyles found "[f]rom the beginning of the process, [Petitioner] has been evasive, given inconsistent statements, and refused to assist ICE in establishing his identity and citizenship." MD GA Case, Report and Recommendation at p. 11, filed here at ECF No. 11-23 as Exhibit "22" to this Response. ICE continually made efforts to obtain Petitioner's true identity. *See* Martin Decl. at ¶¶ 11-12 (filed at ECF No. 11-2 here as Exhibit "1" to this Response.

Throughout this matter, ICE conducted custody reviews. *See* Martin Decl. at ¶ 12. After his repeated refusal to cooperate with ICE efforts to confirm his identity, Petitioner was served with a Decision to Continue Detention on November 15, 2017 (filed here at ECF No. 11-27 as Exhibit "26" to this Response) and Failure to Comply letter on June 19 and June 26, 2018 (copies of which were filed here at ECF Nos. 11-28 and 11-29 as Exhibits "27" and "28" to this Response). Martin Decl. at ¶ 12. On January 2, 2019, February 21, 2019, April 23, 2019 and July 9, 2019, Petitioner also was served with a Form I-229(a), Warning For Failure to Depart, copies of which were filed here at ECF Nos. 11- 30, 11-31, 11-32 and 11-33 as Exhibits "29," "30", "31"and "32" to this Response. *See* Martin Decl. at ¶ 12. These Warning documents each advised Petitioner of his obligation to cooperate in removal efforts *See* Martin Decl. at ¶ 12.

ICE received information and evidence from third party government agencies that corroborated Petitioner's true identity. *See* Martin Decl. at ¶ 11. *See also* Maddox Decl. (filed

here at ECF No. 11-24 as Exhibit 23 to this Response). On June 1, 2020, D.O. Martin interviewed Petitioner and confronted him with this evidence. *See* Martin Decl. at ¶ 11. Only then, for the first time during this interview, did Petitioner finally admit his true name and date of birth. *Id.* Petitioner for the first time provided his name as Naseer Akram Eadaan, and his date of birth as November 5, 1977. *Id.* Petitioner also admitted to using a fake accent to hide his Iraqi nationality. *Id.* Thereafter, the Iraqi Embassy interviewed Petitioner on June 4, 2020 and confirmed his identity. *Id.* Petitioner then cooperated in completing the application for a travel document. *Id.*

ICE received a valid travel document for Petitioner on June 22, 2020. *Id.* The travel document was valid for six months. *Id.* ICE began scheduling Petitioner for a removal flight to Iraq. *Id.* Due to COVID 19, flights into Iraq were temporarily unavailable. *Id.* When Petitioner admitted his true identity and began to cooperate with removal efforts, custody reviews resumed. *See* Martin Decl. at ¶ 12. Petitioner was served with a Decision to Continue Detention letter on September 17, 2020, filed here at ECF No. 12-1 as Exhibit "33" to this Response. *See* Martin Decl. at ¶ 12 (filed at ECF No. 11-2 as Exhibit "1" to this Response). A new travel document was issued for Petitioner in December 2020. *See* Martin Decl. at ¶ 11. Plaintiff also filed here a print-out of Petitioner's Detention History at ECF No. 11-34 as Exhibit "34" to this Response.

Petitioner is currently scheduled for a removal flight within the next three weeks. *See* Martin Decl. at ¶ 11 (filed at ECF No. 11-2 as Exhibit "1" to this Response).

**II.   ANALYSIS**

Petitioner argues in the Petition he filed in the case at bar, among other things that:

> Petitioner is a citizen of Iraq, Petitioner is in ICE custody since January 09th 2017, in the United States, but has been ordered removed to Iraq on February 07th 2017 by an Immigration Judge. Petitioner's removal order is final and there is no appeal. But Petitioner cannot be removed to Iraq or any other country. Thus, Petitioner Remain indefinitely detained in ICE custody, and has been confined for a period far Longer than the law

> mandates, Under 8 U.S.C. 1231(a)(1)-(2), once an alien has Ordered removed, the Attorney General must carry out the removal within a period Of 90 days, during which time the alien shall be detained. The post-removal-period Provision of the same statue, 8 U.S.C.1231(a)(6), allows for certain aliens to be Detained beyond the removal period, but the Supreme Court explicitly limited this Detention period in Zadvydas v, Davis 533 U.S. 678 (2001). In that case, the Court Held that 1231(a)(6) restricts an aliens post-removal-period detention to a period Reasonably necessary to bring about that aliens removal, and that it "does not Permit indefinite detention." Zadvydas, 533 U.S.C. at 689. The Court found that a Presumption exists that an alien may not be held longer than six months: the General rule is that an alien may no longer be confined when there is "no significant Likelihood of removal in the reasonably foreseeable future," Id at 701. In Clark v, Martinez, the Supreme Court extended this holding to inadmissible aliens.125 S.Ct. 716, 722 (2005),

Petition, ECF No. 1 at pp. 1 -2 (sic). Petitioner seeks the following relief:

> Wherefore, petitioner prays that this honorable court to grant the following relief:
>
> 1. Assume jurisdiction over this matter, declaring that petitioner continued Detention is not authorized by the INA and/or violates the Fifth Amendment,
>
> 2. Issue a writ of habeas corpus directing Respondent immediately release Petitioner from custody,
>
> 3. Order respondents to refrain from transferring the Petitioner out of the Jurisdiction of ICE Middle District during the pendency of these proceedings And while the petitioner remain in Respondents custody,
>
> 4. Award Petitioner attorneys fees and costs under the Equal access to Justice Act ("EAJA"), as amended, 5 U.S.C. 504 and 28 U.S.C. 2412, and on any other basis Justified under law,
>
> 5. Grant any other and further relief this court may deem appropriate.

Petition, ECF No. 1 at pp. 5-6 (sic). In Petitioner's Declaration, Petitioner further states:

> I pray this honorable Court one thing, and I believe strongly this court can do it;
>
> (1) To get release in the U.S. with legal statutes, that I can start my life her and be Citizen in the future, I believe I deserved a second chance, and I believe also I'm ready To live in the U.S. I speak and read and write English very well and I know a lot about The U.S. As politic culture and history, also I speak other five languages, Arabic, Kurdish Farsi, German, Spanish.

Petitioner's Declaration (sic), filed at ECF No. 1 at pp. 11-12 (and also at ECF No. 11-5 as Exhibit "4" to this Response).

For the reasons stated below, Petitioner's custody is lawful, and the petition should be denied.

### A. Collateral Estoppel Precludes Petitioner's *Zadvydas* and Section 1231 Arguments

"The doctrine of collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *United States v. Caesar, (USM# 11002-094)*, No.: 18-CR-20968-ALTMAN, 2019 WL 6727504, at *4 (S.D. Fla. Dec. 11, 2019) quoting *Ashe v. Swenson,* 397 U.S. 436, 443 (1970). Stated another way, collateral estoppel precludes consideration of an issue already litigated and resolved in a previous case when:

> (1) the issue at stake is identical to the one involved in the prior proceeding;
> (2) the issue was actually litigated in the prior proceeding;
> (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and
> (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir. 1998); *Palciauskas v. United States*, 939 F.2d 963, 966 (11th Cir. 1991); *Juste v. United State Immigration and Customs*, No: 16-CIV-23357-ALTONAGA/White, 2018 WL 10087056, *2 (S.D. Fla. Jan. 18, 2019) (adopting Report of Magistrate Judge White, 2018 WL 10087059 (S.D. Fla. Dec. 2. 2018). *See also Rajasekaran v. Crandall, Acting Director, Nebraska Service Center, U.S. Citizenship and Immigration Services*, 460 F.Supp.3d 1269, 1274 (M.D. Fla. 2020).

Here, the issue at stake - the legality of Petitioner's detention by ICE - is identical to the issue that was litigated and decided adversely to Petitioner in Petitioner's MD GA Case. As noted above, the Court in Petitioner's MD GA Case specifically held that Petitioner is governed "by the specific, unambiguous language of § 1225(b)(1)(B)(iii)(IV), which mandates

detention of an alien, such as Petitioner, "until removed." MD GA Case, Report and Recommendation at pp. 5-6 (filed here at ECF No. 11-23 as Exhibit "22" to this Response), adopted and made the Order of the Court, MD GA Case, Order, Docket Entry No. 46 (filed here at ECF No. 11-25 as Exhibit "24" to this Response). Accordingly, the Court concluded in the Petitioner's MD GA Case, the precise issue Petitioner raises again here. That is, "the six-month presumptively reasonable removal period under § 1231 and *Zadvydas [v. Davis*, 533 U.S. 678, 697, 699-700 (2001)] does not apply to Petitioner." *Id*. Moreover, the Court in Petitioner's MD GA Case further held that "even if *Zadvydas* applies to Petitioner, he is still not entitled to relief" because of his extensive actions of lying and refusing to cooperate with ICE." *Id*.

The determination of the *Zadvydas* issue was by-definition, a critical and necessary part of the judgment in Petitioner's Middle of Georgia case, and the issue was actually litigated. There was extensive briefing and an evidentiary hearing. *Id*. Petitioner now readily concedes in his December 28, 2020 Declaration appended to his Petition in the instant case that he both lied and refused to cooperate with ICE for over three years. *See* Petitioner's Declaration, ECF No. 1 at pp. 11-12 (also filed here at ECF No. 11-5 as Exhibit "4" to this Response). Finally, the docket of Petitioner's MD GA Case litigated in the Middle District of Georgia reflects that Petitioner had a full and fair opportunity to litigate the legality of his detention. See MD GA Case, Docket Sheet, filed here at ECF No. 11-35 as Exhibit "35" to this Response. Therefore, Petitioner should be collaterally estopped from re-litigating the legality of his detention by ICE in this proceeding. *Juste*, 2018 WL 10087056, *2 and 2018 WL 10087059 at *2. *See also Rajasekaran v. Crandal, Acting Director, Nebraska Service Center, U.S. Citizenship and Immigration Services*, 460 F.Supp.3d 1269, 1275-80 (M.D. Fla. 2020).

### B.  Collateral Estoppel Also Bars Petitioner's Due Process Argument

Petitioner appears to attempt to allege a due process violation under the Fifth Amendment Petition, ECF No. 1 at p. 5, Prayer for Relief, Paragraphs 1-6. Petitioner's due

process claim set forth in Petitioner's Prayer for Relief is also barred by collateral estoppel.

In Petitioner's MD GA Case, Petitioner raised the same due process claim. There, the Court held "Petitioner is not entitled to relief." MD GA Case, Report and Recommendation at pages 11 through 14 (filed here at ECF No. 11-23 as Exhibit "22" to this Response), adopted and made the order of the Court, MD GA Case, Order, Docket Entry No. 46 (filed here at ECF No. 11-25 as Exhibit "24" to this Response).

Petitioner now concedes he failed to cooperate for over three years. *See* Petitioner's Declaration, ECF No. 1 at pp. 11 through 12 (also filed at ECF No. 11-5 as Exhibit "4" to this Response). And the Court in Petitioner's MD GA Case discussed Petitioner's failure to cooperate in significant detail. MD GA Case, Report and Recommendation at pages 11 through 14 (filed here at ECF No. 11-23 as Exhibit "22" to this Response), adopted and made the order of the Court, MD GA Case, Order, Docket Entry No. 46 (filed here at ECF No. 11-25 as Exhibit "24" to this Response). As Magistrate Judge Hyles held, "[t]he Court does not accept that an alien detainee can engage in a game of catch-me-if-you-can and then be rewarded for his obstructive behavior." *Id*.

While the denial of Petitioner's application for habeas relief in his MD GA case was without prejudice, there are two central factors that led to the fact that Petitioner has not been removed as of the date of this filing: (a) Petitioner's failure to cooperate with ICE until June 2020 and (b) the COVID-19 pandemic which led a delay in removal. First, Petitioner did not disclose his identity and begin to cooperate until June 1, 2020. *See* Martin Decl., ¶¶ 11, 12 (filed at ECF No. 11-2 as Exhibit "1" to this Response). Once ICE determined Petitioner's true identity, travel documents were readily obtained and ICE received a valid travel document for Petitioner on June 22, 2020. *Id.* The travel document obtained on June 22, 2020 was valid for six months. *Id.* at ¶ 11. ICE began scheduling Petitioner for a removal flight to Iraq. *Id.* Due to the COVID 19 worldwide pandemic, flights into Iraq were temporarily unavailable. *Id* ¶ 11, 12. When the initial travel documents expired, ICE obtained new travel

documents and Petitioner is now scheduled to be removed within three weeks of the date of this filing. *Id.*

### C. The Habeas Petition should be Denied because Petitioner has Failed to Establish that Removal will not Occur in the Reasonably Foreseeable Future.

Petitioner states that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Petition, ECF No.1 at 1. However, as noted, ICE is in receipt of Petitioner's new travel document, and a travel itinerary for removal is at the time of the filing of this Response, scheduled for a date within three weeks of the date of this filing. *See* Martin Decl., ¶ 11. As such, Petitioner has failed to meet his burden, and his Petition should be denied.[9]

### D. The *Pro Se* Petitioner's Request for Attorney's Fees and Expenses Should Be Denied.

In his prayer for relief, the *pro se* Petitioner requests an award of attorneys' fees and expenses. Petitioner is not represented by counsel in this matter and has no right to an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. 504 and 28 U.S.C. 2412, and/or upon any other basis. As such, Petitioner's request for attorneys' fees and costs, should and must be denied.

---

[9] Petitioner argues that he should be "released" so he can one day become a citizen. Petitioner's Declaration, ECF No. 1 at 12. Inasmuch as Petitioner seeks to challenge his removal order, this Court lacks jurisdiction to review his claim since exclusive jurisdiction to review challenges to removal orders lies with the Eleventh Circuit Court of Appeals. *See* 8 U.S.C. § 1252(a)(5) ("…[A] petition for review filed with an appropriate court of appeals … shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of [the Immigration and Nationality] Act…").

### III.  CONCLUSION

For the foregoing reasons, the Petition should be denied.

**Dated: January 24, 2021**          Respectfully submitted,

**ARIANA FAJARDO ORSHAN**
**UNITED STATES ATTORNEY**

**James A. Weinkle**
Florida Bar No. 0710891
Assistant United States Attorney
Email: James.Weinkle@usdoj.gov
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Telephone: 305.961.9290

**Counsel for United States of America**

## **CERTIFICATE OF SERVICE**

 I hereby certify that on January 24, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on January 25, 2020 on the *pro se* Petitioner identified on the attached Service List via U.S. Mail as he is not authorized to receive electronically Notices of Electronic Filing.

               By: s/ James A. Weinkle
                  James A. Weinkle
                  Assistant United States Attorney

*EADAAN, NASEER AKRAM v.*
*U.S. Attorney General, et al.,*
**Case No.: 1:21-cv-20046-ALTMAN**
United States District Court
Southern District of Florida

| | |
|---|---|
| **Naseer Akram Eadaan**<br>A # 20XXX XXX X21<br>Krome Service Processing Center<br>Inmate Mail/Parcels<br>18201 SW 12th Street<br>Miami, FL 33194<br><br>*Pro Se* Petitioner<br><br>*Served via United States Mail* | **James A. Weinkle**<br>**Assistant United States Attorney**<br>**Office of the United States Attorney**<br>**Southern District of Florida**<br>James L. King Federal Justice Building<br>99 N.E. 4th Street, Suite 300<br>Miami, FL 33132<br><br>Email: James.Weinkle@usdoj.gov<br><br>Telephone: 305.961.9290<br>Facsimile: 305.530.7139<br><br>Counsel for United States of America<br><br>*Served via Notice of Electronic Filing generated by CM/ECF* |